```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
EVAN A. DAVIS,

                    Plaintiff,              16-cv-1750 (JGK)

        - against -                          OPINION AND ORDER

PETER S. KOSINSKY, ET AL.,

                    Defendants.
------------------------------------
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Evan A. Davis, brings this action for declaratory and injunctive relief against the defendants, the Commissioners of the New York State and New York City Boards of Election in their official capacities. Davis alleges that §§ 6-138, 6-140, 6-146, and 7-104 of the New York Election Law (the "Candidate Laws") are unconstitutional under the First and Fourteenth Amendments. Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the defendants moved to dismiss Davis's claims for lack of subject matter jurisdiction and for failure to state a claim. For the reasons explained below, the Rule 12(b)(1) motion **is granted.**

                                   I.

When presented with motions under both Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the first issue is

1

whether the Court has the subject matter jurisdiction necessary to consider the merits of the action. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); S.E.C. v. Rorech, 673 F. Supp. 2d 217, 220-21 (S.D.N.Y. 2009).

To prevail against a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; Graubart v. Jazz Images, Inc., No. 02-cv-4645 (KMK), 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In considering such materials, the Court "may not rely on conclusory or hearsay statements contained in the affidavits." Attica Cent. Sch., 386 F.3d at 110. In considering matters outside the pleadings, the Court is guided by that body of

2

decisional law that has developed under Federal Rule of Civil Procedure 56. Kamen, 791 F.2d at 1011; see also Rorech, 673 F. Supp. 2d at 221.

## II.

The following facts alleged in the Amended Complaint are assumed to be true.

Article 19 of the New York State Constitution requires that a statewide vote be held every 20 years to determine whether to call a Constitutional Convention. Am. Compl. ¶ 20. The next Constitutional Convention vote will be held in November 2017, and if a majority of New York voters vote in favor, an election to select delegates to the Convention will be held in November 2018, with the Convention to follow in April 2019. Am. Compl. ¶ 20. The last time New York held a Constitutional Convention was in 1967. Am. Compl. ¶ 21.

The plaintiff Davis states that if a majority of voters vote in favor of holding a Constitutional Convention, and if he can thereafter obtain the 3,000 voter signatures required to appear on the ballot, he intends to seek election as a non-partisan delegate to the Convention. Am. Compl. ¶¶ 23, 28. Davis intends to campaign for the calling of a Constitutional Convention by informing voters that they will have an opportunity to elect delegates unaffiliated with any political group. Am. Compl. ¶ 27. Davis alleges that the Candidate Laws

restrict the exercise of his constitutional rights because they prevent him from running as an independent candidate untethered to any particular political body name or symbol.  Am. Compl. ¶ 32.

The Candidate Laws impose certain requirements before an individual can appear on the ballot as an independent candidate. To appear on the ballot, a candidate must submit a petition that "select[s] [a] name . . . as the name of the independent body making the [candidate's] nomination," and provide an "emblem of such body."[1]  N.Y. Elec. Law § 6-140(1)(a).  If the candidate fails to select a name for the independent body or provide an emblem, the "officer or board in whose office the petition is filed shall select an emblem or name or both to distinguish the candidates thereby."  N.Y. Elec. Law § 6-138(3)(f).  To appear on the ballot, an independent candidate must also "accept the designation or nomination as a candidate of each . . . independent body."  N.Y. Elec. Law § 6-146(1).  The Candidate Laws also require that the nominating body's name and emblem appear on the ballot, and that the nominating body's name appear beside the candidate's name.  See N.Y. Elec. Law § 7-104.

---

[1] A candidate is free to select any name for the nominating body, provided that the name does not cause confusion with the names of any previously filed nominating body, is fewer than fifteen characters, and does not include words such as "American," "United States," "National," "New York State," "Empire State," or any abbreviation thereof.  See N.Y. Elec. L. §§ 2-124(2)-(3).  A candidate may also choose any emblem as long is it not similar to other emblems used by governmental bodies, religious entities, or other groups such that it would potentially cause confusion.  See N.Y. Elec. L. § 2-124(2).

4

The plaintiff Davis brought suit against the Commissioners of the New York State Board of Elections and the Commissioners of the New York City Board of Elections.  See Am. Compl. ¶¶ 12-15.  Davis alleges that the Candidate Laws severely burden his First Amendment rights of free belief, speech and association, and to be free of government-compelled belief, speech, and association.  Am. Compl. ¶ 39.  Davis also claims that the Candidate Laws violate the Equal Protection Clause of the Fourteenth Amendment by discriminating between candidates who choose to be nominated as a delegate to a Convention by a specified body, and unaffiliated candidates who oppose being nominated by a nominating body.  Am. Compl. ¶ 41.  The plaintiff seeks declaratory relief declaring that the Candidate Laws are unconstitutional both facially and as applied, as well as injunctive relief enjoining the defendants from enforcing the challenged provisions.  Am. Compl. ¶ 42.

The defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that this Court lacks subject matter jurisdiction, and that the plaintiff's First Amendment Complaint fails to state a claim upon which relief can be granted.

III.

A.

The defendants argue that the plaintiff's complaint should be dismissed under Rule 12(b)(1) because his claim is not ripe, and he therefore lacks standing.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

Overlapping with the standing doctrine is the doctrine of constitutional ripeness.  See Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 688 (2d Cir. 2013) ("Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III Standing.").  The purpose behind the doctrine of constitutional ripeness is to "prevent[] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d

6

65, 110 (2d Cir. 2013) (quoting Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 226 (2d Cir. 2008)). A requirement for constitutional ripeness is "that the plaintiff's injury be imminent rather than conjectural or hypothetical." Id.; Coffran v. N.Y.C. Pension Fund, 46 F.3d 3, 4 (2d Cir. 1995)(per curiam) ("Article III court[s] cannot entertain a claim which is based upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quoting Oriental Health Spa v. City of Fort Wayne, 864 F.2d 486, 489 (7th Cir. 1988))); see also Schulz v. Cuomo, 22 N.Y.S. 3d 602, 605-06 (App. Div. 2015) (dismissing as not ripe for adjudication a declaratory judgment action seeking to bar certain officials from participating as delegates to the Constitutional Convention because it was speculative that the Convention would ever occur). Moreover, "[a] plaintiff must allege something more than an abstract, subjective fear that his rights are chilled in order to establish a case or controversy." Walsh, 714 F.3d at 689.

Here, the plaintiff alleges two distinct phases of possible injury. The first is an alleged injury to the plaintiff's ability to campaign for a Constitutional Convention. The second injury relates to whether -- assuming a Convention is called -- the plaintiff will be hampered in his efforts to appear on the ballot as a non-partisan candidate.

As for the first alleged harm, the plaintiff argues that he has a currently cognizable injury due to his alleged inability to argue to potential supporters that the Convention can be attended by non-partisan delegates. But it is plain that regardless of the Candidate Laws, the plaintiff remains free to argue for the election of non-partisan candidates to the Convention and that, in his view, the Convention should be peopled by such candidates. Despite the necessity of a nominating body in order to appear on the ballot, the body need not be partisan or political. Indeed, the New York Election Law specifically refrains from defining independent nominating bodies as political. See N.Y. Elec. Law § 1-104(12) ("The term 'independent body' means any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a party as herein provided."). As the defendants note, the Candidate Laws do not prevent the plaintiff from running as a candidate for a non-partisan or unaffiliated committee. Nor do the Candidate Laws prevent the plaintiff from arguing that other candidates should likewise run on a non-partisan basis.

The plaintiff claims that the Candidate Laws defeat one of his "core messages . . . namely that a Convention need not be dominated by partisan political interests because unaffiliated non-partisan candidates, perceived as such by the voters, will

8

be able to run and attract the votes of people concerned about undue partisanship." Davis Decl. ¶ 3. But the plaintiff fails to explain how the Candidate Laws interfere with his ability to communicate this exact message.[2] In fact, the plaintiff has already established a campaign website that states that the plaintiff "intends to run as a non-partisan candidate for convention delegate . . . if a convention is called," and further acknowledges that he already has "organized, met and corresponded with an informal discussion group of persons, including prominent former leaders of New York State and municipal government, who favor calling a Constitutional Convention." Davis Decl. ¶ 6; Schwartz Decl. Ex. A-1. Davis also admits that he has "already appointed a campaign finance Treasurer, opened a campaign finance committee bank account, registered that ballot issue committee with the New York State Board of Elections ("State Board"), raised monies to fund [his] advocacy, filed receipts and expenditures disclosure with the State Board and established a website for that advocacy." Davis Decl. ¶ 3.

The plaintiff is already engaging in the political speech that he claims is being unconstitutionally burdened by the

---

[2] The plaintiff relies primarily on his own affidavit and an affidavit from a supporter to claim that he is currently being injured. However, the descriptions of his alleged injury in both affidavits are completely conclusory, such that they do not support a claim of current injury. See Attica Cent. Sch., 386 F.3d at 110.

9

Candidate Laws; the plaintiff's alleged injury-in-fact is in actuality nothing "more than an abstract, subjective fear that his rights are chilled" that is insufficient to "establish a case or controversy." Walsh, 714 F.3d at 689; see also Zherka v. DiFiore, 412 F.App'x 345, 348 (2d Cir. 2011) (summary order) (concluding that a plaintiff could not establish a cognizable injury when it continued to participate in allegedly chilled First Amendment activity because any "claim of [a] chilling effect was purely subjective and . . . plaintiffs have provided no objective evidence of a reasonable fear of prosecution"). There is no plausible basis to conclude that the plaintiff is currently being injured by the Candidate Laws.

The plaintiff unsuccessfully attempts to liken the facts of his case to Walsh. But Walsh involved a plaintiff who wanted to express political messages related to an election being held a month away, and the plaintiff provided evidence of a political advertisement that, if aired, could subject the plaintiff to civil or criminal liability. 714 F.3d at 686. Here, by contrast, the plaintiff's political messages relate to a vote for a Constitutional Convention that will be held in November 2017, and an election for delegates to the Convention that will be held, if ever, in November 2018. Moreover, the plaintiff fails to specify any current or proposed political activity that

would precipitate a credible threat of criminal or civil liability as a result of the Candidate Laws.

The lack of any direct restrictions that the Candidate Laws currently impose on the plaintiff makes his reliance on <u>Lerman v. Board of Elections in the City of New York</u>, 232 F.3d 135 (2d Cir. 2000) similarly unpersuasive. In <u>Lerman</u>, the court found that a plaintiff had standing to challenge a requirement that all witnesses to ballot access petitions be residents of the relevant political subdivision, because the New York City Board of Elections had stricken all petitions witnessed by the non-resident plaintiff.  <u>See</u> <u>Lerman</u>, 232 F.3d at 138, 142.  In this case, the plaintiff does not allege that the defendants have even objected to any advertising by the plaintiff, much less taken any action against it.  Moreover, there is no imminent threat that the defendants will take any action against any nominating petitions for the plaintiff because no such petitions could be circulated until after voters decide in November 2017 whether to hold a Constitutional Convention.[3]

The plaintiff's references to <u>New Mexicans for Bill Richardson v. Gonzales</u>, 64 F.3d 1495 (10th Cir. 1995) and <u>Miller</u>

---

[3] The plaintiff also fails in his attempt to rely on <u>Lerman</u> to argue that he has third-party standing to bring his claim.  The plaintiff has failed to show that any third party is being injured for whom the plaintiff could assert rights.  As the lack of any injury-in-fact makes clear, the plaintiff has failed to "demonstrate a substantial risk that [the] application of the [Candidate Laws] will lead to the suppression of speech."  <u>Lerman</u>, 232 F.3d at 143-44.

v. Brown, 462 F.3d 312 (4th Cir. 2006), are also unpersuasive. The court in Gonzalez determined that the candidate plaintiff had standing to challenge campaign finance laws that were already restricting his ability to engage in political fundraising, while also noting that the plaintiff had "shown that possible statutory violations already have occurred which might subject him to criminal prosecution." 64 F.3d at 1500-02. And the court in Miller concluded that a local political party had standing to challenge Virginia's open primary requirements because such laws would "dramatically change[] the plaintiffs' decisions about campaign financing, messages to stress, and candidates to recruit." 462 F.3d at 317. Standing in stark contrast to these cases, the plaintiff here fails to plead sufficient facts showing that the Candidate Laws inhibit his political activity in a way that resembles the challenged laws in either Gonzalez or Miller. In sum, the Candidate Laws do not prevent the plaintiff from engaging in any constitutionally protected activity, and the defendants are treating the plaintiff equally with all other candidates. The plaintiff has failed to meet his burden to establish an injury-in-fact.

As to the plaintiff's alleged injury that he will be hampered from appearing on the ballot on a non-partisan basis if a Convention were to be called, it is clear that any such injury is "conjectural or hypothetical" rather than "actual or

imminent." <u>Friends of the Earth</u>, 528 U.S. at 180.  For the plaintiff to appear on the ballot to the Constitutional Convention as a potential delegate, a majority of New York voters would first have to vote for a Constitutional Convention in November 2017, something that they have failed to do since 1967.  Then, the plaintiff would be required to obtain 3,000 signatures of registered voters,[4] a process that the plaintiff could not start until July 2018.  <u>See</u> N.Y. Elec. L. § 6-138(4). Accordingly, if the Court were to address any claimed injury related to the plaintiff's appearance on a potential ballot, it would be the equivalent of "entertain[ing] a claim . . . based upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  <u>Coffran</u>, 46 F.3d at 4 (quoting <u>Oriental Health Spa</u>, 864 F.2d at 489).

Even if these contingencies were to materialize, it is unclear how the plaintiff would be harmed by a requirement that the plaintiff designate a name and emblem for his nominating body.  The plaintiff remains free to choose any of a number of titles, such as "unaffiliated" or "non-partisan," so long as no other candidates have such a designation.  <u>See, e.g.</u>, <u>Schulz v. Williams</u>, 44 F.3d 48, 55, 59 (2d Cir. 1994) (noting that a "myriad of independent bodies . . . have held a place on New

---

[4] The plaintiff makes no attempt to challenge the validity of the signature requirement.

York's Ballot," including a body designated as "No Party," and upholding the constitutionality of a requirement that signers of nomination petitions must also include their election district, assembly district, and ward). Moreover, the plaintiff apparently has no qualms with being associated with a group in relation to his candidacy, having already registered a committee named "Friends of Evan Davis" with the State and New York City Boards of Elections. See Davis Decl. ¶ 6. It is implausible to conclude that requiring the plaintiff to choose a name and emblem for his unaffiliated nominating body –- in effect, requiring the plaintiff to designate a name and emblem for the group supporting him –- results in a cognizable injury of a constitutional dimension. Cf. Timmons v. Twin Cities Area New Party, 520 U.S. 351, 369-70 (1997) (concluding that a law prohibiting candidates from appearing on a ballot as a candidate of more than one party did not violate the plaintiff's First and Fourteenth Amendment's associational rights).

While the plaintiff raises the specter that the defendants will designate a false committee name or emblem for him, this would occur only if the plaintiff fails to comply with the Candidate Laws and opts not to designate a committee name and emblem. If the Court were to engage in conjecture and assume this would occur, it would "entangl[e] itself in abstract disagreements over matters that are premature for review because

14

the injury is merely speculative and may never occur." In re MTBE, 725 F.3d at 110 (quoting Ross, 524 F.3d at 226).

It is evident that the plaintiff has failed to meet his burden of establishing by a preponderance of the evidence that this Court has jurisdiction to hear his claim. See Makarova, 201 F.3d at 113. The plaintiff's claims are not constitutionally ripe.

### B.

Moreover, the plaintiff's claims are also premature under the doctrine of prudential ripeness. See Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003) (noting that the doctrine of prudential ripeness -- as distinct from constitutional ripeness -- may be used by courts when a "case will be better decided later and . . . the parties will not have constitutional rights undermined by the delay").

For the reasons stated above, it is clear that the issues before the Court are not fit for judicial decision because the plaintiff's appearance on any ballot for a Constitutional Convention are "contingent on future events or may never occur." Walsh, 714 F.3d at 691 (quoting N.Y. Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 (2d Cir. 2008)). Moreover, because the Candidate Laws do not in any plausible way limit the plaintiff's political activity, they do not "create[] a direct and immediate dilemma" for the plaintiff. Id. This case is

15

plainly one where the Court should "avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial." Simmonds, 326 F.3d at 357.  Accordingly, the plaintiff's claims are not prudentially ripe.

## CONCLUSION

The complaint is **dismissed without prejudice** for lack of subject matter jurisdiction.  Having concluded that the Court lacks subject matter jurisdiction in this case, the defendants' motion to dismiss the plaintiff's complaint for failure to state a claim is denied as moot.  The Clerk is directed to enter Judgment and to close this case.  The Clerk is also directed to close all pending motions.

**SO ORDERED.**


**Dated:    New York, New York**
        **November 4, 2016**                _____/s/_____
                                                **John G. Koeltl**
                                    **United States District Judge**